SUPERIOR COURT 
 
 TEWKSBURY FEDERAL CREDIT UNION vs. SHELLEY HOLDEN

 
 Docket:
 1981CV00152
 
 
 Dates:
 October 27, 2022
 
 
 Present:
 John T. Lu Justice of the Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
 
 

             The defendant Shelley Holden (“Holden”) served as the Chief Executive Officer of the Plaintiff Tewksbury Federal Credit Union (“TFCU”) for almost twenty years until she was “terminated” for allegedly committing multiple acts of fraud and misconduct and mismanaging TFCU. “Termination” versus “Suspension” may be an issue in this case. Following her termination, TFCU requested that Holden transfer her interests in an insurance policy to TFCU, but Holden refused. As a result, TFCU brought this civil action
 
                                                            -1-
 
against Holden seeking an order of specific performance that Holden transfer her interests in the insurance policy to TFCU (Count 1), and also asserting claims for breach of contract (Count 2), breach of fiduciary duty (Count 3), and conversion (Count 4). Holden, in turn, filed a counterclaim for declaratory relief with as to her interests and rights to the insurance policy.
            Holden’s moves for partial summary judgment on Count 1 (specific performance), Count 2 (breach of contract), and Count 4 (conversion), and on her counterclaim (declaratory relief). TFCU cross-moves for summary judgment on Counts 1 and 2, and on Holden’s counterclaim. After hearing both motions are DENIED.
            Given that this case survives summary judgment, the court recommends that the case be tried non-jury and jury-waived in conjunction with stipulations as to many issues. Questions of fact would include: What acts did the defendant do that might or might not constitute gross negligence or willful misconduct, or contravene a directive of the National Credit Union Administration (NCUA)?
 
                                                            -2-
 
            It appears that this case will be dominated by non-jury issues.
            Toward that end the court ORDERS the parties to file a stipulation as to any agreed facts for trial by March 2, 2023, subject to adjustment by the court.
            The court requests the parties narrow the factual issues for trial.
BACKGROUND
            Holden began working at TFCU in 1987. She was promoted to CEO in 2000.
            On January 21, 2014, Massachusetts Mutual Life Insurance Company issued Holden a life insurance policy in the amount of $2,412,646 (hereinafter, “Insurance Policy”), of which Holden was the sole owner. In May 2014, Holden and TFCU entered into a Split Dollar Agreement, pursuant to which TFCU agreed to loan Holden some of the funds needed to pay the premiums on the Insurance Policy. In exchange, Holden agreed to assign to TFCU a portion of the death benefit proceeds. TFCU also agreed to
 
                                                            -3-
 
provide Holden with an annual retirement income benefit of $50,000.
            The Split Dollar Agreement could be terminated for a variety of reasons, including Holden’s termination for cause. Section 10(c) of the agreement defines “cause” as (a) gross negligence or willful misconduct in the performance of Holden’s duties of employment, continuing for thirty (30) days after written notice thereof from TFCU’s Board of Directors (“TFCU Board” or “Board”); or (b) conviction of a felony or misdemeanor involving theft, misappropriation, or embezzlement of TFCU’s property. In the event of Holden’s termination, Holden was obligated to transfer her interests in the Insurance Policy to TFCU.
            In December 2017, Rodney Morrison (“Morrison”), a member of TFCU, complained to the National Credit Union Administration (“NCUA”), an independent federal agency that oversees and regulates federal credit unions, that Holden improperly transferred money in and out of his TFCU account. A TFCU Supervisory Committee requested that a consulting firm,
 
                                                            -4-
 
Walsh & Co. (“Walsh”), conduct an audit to investigate Holden’s allegedly improper actions.
            On December 12 and 13, 2017, Holden met with Walsh representatives, during which they asked Holden about certain transactions involving Morrison and Michael Stimpson (“Stimpson”),[1] Holden’s friend and another TFCU member. Walsh also reviewed Holden’s, Morrison’s, and Stimpson’s TFCU accounts.
            On December 18, 2017, Walsh issued a report (“Walsh Report”), stating that certain of Holden’s acts appeared to be a violation of the Standards of Conduct under the Code of Federal Regulations for both directors and employees of financial institutions. Walsh also concluded that Holden had performed transactions on her own accounts, and it recommended that employees be prohibited from doing so. Walsh also found that Holden made personal charges on TFCU’s Business MasterCard, and it recommended that TFCU prohibit employees’ personal use of its Business MasterCard.
 
-------------------------------------
 
            [1] Holden pays Stimpson’s bills and has taken care of his finances since 2013.
 
                                                            -5-
 
            That same day, Holden was advised that NCUA insisted that she be terminated.[2]
            On December 21, 2017, the TFCU Board conducted a special meeting, at which NCUA examiner Jeffrey Noe (“Noe”) attended. Noe reviewed Morrison’s allegations with the Board and noted that Holden had violated credit union policies, including those referenced in the Walsh Report. NCUA representatives left the meeting, and the Board suspended Holden immediately. Holden was called into the meeting and told she was suspended. Holden never worked for TFCU again. TFCU later asked Holden to assign her interests in the Insurance Policy to it, but Holden refused.
DISCUSSION
            It is undisputed that Holden was terminated and that TFCU’s Board did not provide her with written notice as required under Section 10(c). Assuming, without deciding, that Holden committed acts of gross negligence or willful misconduct, the central issue is whether TFCU was excused from providing written
 
-------------------------------------
 
            [2] It is unclear who made this statement.
 
                                                            -6-
 
notice to Holden prior to her termination. See Shawmut-Canton LLC v. Great Spring Waters of Am., Inc., 62 Mass. App. Ct. 330, 340 (2004) (“Compliance with a notice provision is not required where it would amount to a ‘useless gesture’” [citation omitted].).
            TFCU claims that it was excused from complying with the notice requirement for three reasons. First, it contends that Holden’s actions were so egregious that she could not be allowed to continue as CEO and have further access to TFCU accounts or member information. Second, TFCU asserts that NCUA directed it to terminate Holden and that it was obligated to comply. Third, TFCU contends that Holden could not continue as CEO, because federal law requires credit union employees to have bond coverage and that Holden’s bond coverage terminated when TFCU became aware of her misconduct.[3] All of these arguments rely on facts that either are not conclusively established or not fully developed in the record. Even if they were conclusively
 
-------------------------------------
 
[3] At the time of Holden’s termination, TFCU’s bond coverage stated, in pertinent part: “This bond terminates as to any Employee or Director as soon as any Director, officer, or supervisory staff of an Insured who is not in collusion with such person, learns of: (a) any dishonest or fraudulent act committed by such person at any time, whether or not related to the Insured’s activities or the type covered under this bond . . “
 
                                                            -7-
 
established and fully developed subject to full “opposition” the court would not be persuaded that the TFCU would be entitled to summary judgment. For example, it may well be that TFCU could not terminate Holden for 30 days for purposes of the insurance policy but could have suspended her and could have terminated her electronic access to bank data. NCUA’s alleged “direction” to terminate Holden does not assist the defendant. It appears this issue would have been resolved if TFCU advised NCUA of her suspension, termination of access to bank data, and TFCU’s issuance of a no trespass notice to Holden. Finally, bonding requirements are irrelevant if Holden no longer did anything at or for TFCU during her 30-day suspension. To the extent that TFCU seeks grant of its motion for summary judgment based on its expert’s interrogatory, the expert’s anticipated testimony is based, in part, on facts that are not set forth in the record.
Notably, the Statement of Undisputed Facts does not refer to TFCU’s expert interrogatory nor some the facts on which it relies. In this case (and fairly often) the Statement of Undisputed Facts is a key document in a summary judgment package. TFCU is not
 
                                                            -8-
 
entitled to shortcut this procedure in the circumstances of this case because in the facts of this case to dispense with these requirements would prejudice the opposition.
            Material issues of fact include but are not limited to alleged careless or inappropriate use of the credit union computer system(s), loans in violation of credit union policies and procedures, but probably not “fraud” within the meaning of that Massachusetts civil cause of action, moving funds of family members, and the extent of any permission given by the family member, and unilaterally increasing her own credit union credit card limit. Did other employees frequently do these same acts without a problem? When did the “termination” occurred (as opposed to a suspension). Because there are genuine facts in dispute (at least on this “paper” record), summary judgment is not appropriate in either party’s favor.
ORDER
 
                                                            -9-
 
            For the reasons stated in the foregoing memorandum of decision, it is hereby ORDERED that the parties’ cross motions for summary judgment are DENIED.